## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 24-CR-140-JFH |
| CORY LAMAR JACKSON, | |
| Defendant. | |

### OPINION AND ORDER

Before the Court is Defendant Cory Lamar Jackson's ("Defendant") Motion to Suppress [Dkt. No. 31] which seeks to suppress the fruits of the warrantless vehicle search that resulted in Defendant's arrest and indictment in this matter. Defendant maintains that the vehicle search was in violation of his Fourth Amendment rights because it was not supported by probable cause. The Government has responded, arguing that the search is justified under the "automobile exception" to the warrant requirement, as there was probable cause for the search under the totality of the circumstances. A hearing was held on Defendant's Motion on July 15, 2024.

### BACKGROUND

On May 7, 2024, a federal grand jury returned an indictment charging Defendant with Possession of Cocaine with Intent to Distribute in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)(ii)(II). Dkt. No. 14. Defendant's charges arise from a search conducted of Defendant's vehicle, which yielded two kilograms of cocaine; this is the evidence that Defendant now seeks to suppress. Central to the parties' dispute is whether probable cause existed for the search of Defendant's vehicle. As such, the Court will set forth the circumstances surrounding the search, as presented at the hearing in this matter and in the parties' briefs.

On April 11, 2024, Trooper Hudson observed a gray Toyota SUV depart from the main travel lanes of Interstate 44 and enter the toll plaza while crossing the safety bar; Hudson also observed that the vehicle's fog lamps were turned on improperly. Dkt. No. 31-1 at 4. Hudson pulled the vehicle over. *Id*.

On approach to the passenger side, Hudson noted that the driver (Defendant Jackson) was friendly and provided all requested documents; the passenger seemed very reluctant to interact with Hudson. *Id*. Trooper Hudson learned that the vehicle was a rental car, and the rental agreement showed that the vehicle was rented from April 9, 20204 to April 11, 2024. *Id*. at 5. The vehicle was rented from, and was to be returned to, Springfield, Missouri. *Id*. Hudson discerned a distinct odor of burnt marijuana coming from the vehicle; it was also noted that Defendant's hand appeared to tremble as he handed Trooper Hudson the requested documents. Id. at 4. No luggage was observed in the vehicle. Trooper Hudson observed open drinks and food and candy wrappers in the vehicle, signs of what he referred to as "hard travel." *Id*.

Hudson asked Defendant to exit his vehicle and sit in the front passenger's seat of Hudson's patrol car, which he did. *Id*. Hudson conducted routine records check of Defendant which revealed an in-state only warrant from Arkansas. *Id*. When asked about his travel, Defendant stated that he and his passenger, Defendant Ransom, had come from Springfield to Oklahoma, where they had stayed a few days, just to get out of Springfield. *Id*. Trooper Hudson again observed signs of Defendant's nervousness, including shallow breathing and an elevated heart rate visible in Defendant's torso and neck. *Id*.

Trooper Hudson returned to Defendant's vehicle to obtain identification from the passenger, Ransom. *Id*. Ransom told Hudson that he did not have any identification with him as he did not have his wallet, but he provided his name and date of birth. *Id*. at 5. As he

communicated with Ransom, Trooper Hudson again smelled marijuana from inside the vehicle. *Id*. When asked about their travel plans, Ransom stated that he and Jackson had driven to Houston to buy a car. *Id*.

By this time, Hudson had received information from dispatch records which revealed that Jackson had prior criminal convictions related to drug distribution. *Id*. Trooper Hudson asked Defendant about the smell of marijuana in the vehicle; Defendant denied that there was marijuana in the vehicle. *Id*.

Trooper Hudson decided at this time that there was probable cause to search Defendant's vehicle. *Id*. Trooper Hudson searched the vehicle and he discovered, below the folded third-row seats, two vacuumed sealed bricks of cocaine. *Id*.

## ANALYSIS

### I.   Applicable Legal Standard

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As such, law enforcement must ordinarily obtain a warrant prior to executing a search. However, there are exceptions to the warrant requirement. Relevant here, one such exception to the warrant requirement is the automobile exception, under which officers possessing probable cause to believe a car contains contraband may search the car without first obtaining a search warrant. *United States v. Mercado*, 307 F.3d 1226, 1228 (10th Cir. 2002). "The rationale for the automobile exception is based on both the inherent mobility of cars (as it is often impracticable to obtain a warrant before a car can be driven away) and the fact that there is a reduced expectation of privacy with motor vehicles." *Id.*

Probable cause to search a vehicle is established if, under the "totality of the circumstances"

there is a "fair probability" that the car contains contraband or evidence. *United States v. Nielsen*, 9 F.3d 1487, 1489-90 (10th Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). Though probable cause "is not a high bar," the Government must still present sufficient evidence that "would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1220 (10th Cir. 2020); *United States v. Sparks*, 291 F.3d 683, 687 (10th Cir. 2002).

Relevant to these particular facts, the Tenth Circuit has held that: "although the smell of burnt marijuana emanating from a vehicle provides probable cause to search the passenger compartment of that vehicle, if that search fails to uncover corroborating evidence of contraband, probable cause to search the trunk of the vehicle does not exist." *United States v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000) (citing *United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993); *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 1995); *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998)). The Tenth Circuit further explained: "the smell of burnt marijuana is indicative of drug usage, rather than drug trafficking, and because it is unreasonable to believe people smoke marijuana in the trunks of cars, the mere smell of burnt marijuana does not create the fair probability that the trunk contains marijuana." *Id*.

## II.     The odor of burnt marijuana provided probable cause for the challenged search.

Defendant relies on *Wald* to support his argument for suppression in this matter, arguing that the search of the seat compartment in which the cocaine was found is analogous to the unlawful trunk search in *Wald*. Dkt. No. 31 at 4-5. This Court does not agree.[1]

---

[1]   Further to this point, although invited to do so, Defendant has not provided the Court any authority to support its analogy.

The cocaine that Defendant seeks to suppress was found in the open compartment just underneath the folded third-row seats of the SUV. *Wald* dictates that the smell of burnt marijuana provides probable cause to search the "passenger compartment" of the vehicle. The Tenth Circuit has defined "passenger compartment" as "any area generally reachable without exiting the vehicle, without regard to the likelihood in a particular case that such a reaching was possible." *United States v. Olguin-Rivera*, 168 F.3d 1203, 1205 (10th Cir. 1999). Given this definition, the third-row passenger seat and the open compartment into which the seats fold is within the "passenger compartment." *See Olguin-Rivera*, 168 F.3d at 1206-1207 (holding that rear cargo area of SUV was within "passenger compartment"). Certainly, this area was accessible without the need for a passenger to exit the vehicle, unlike the structure of a vehicle with a traditional, separated trunk.

This conclusion is in keeping with *Wald*'s reasoning. The "scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 823-24 (1982). The smell of burnt marijuana does not provide probable cause for a search of the trunk because it is "unreasonable to believe people smoke marijuana in trunks." *Wald*, 216 F.3d at 1226. However, it is not unreasonable to believe that Defendant Jackson or Ransom may have smoked marijuana in the SUV and then discarded or hid evidence of their marijuana use in the third-row section of the SUV. Undoubtedly, that could have been done even as the vehicle travelled along the highway. Moreover, had marijuana been smoked in the third-row passenger seat area, the odor of burnt marijuana would have been noticeable to Trooper Hudson at the front passenger's side window. Accordingly, there was probable cause to search the third-row seat area because what Hudson smelled reasonably may have come from that area. *Wald* establishes that, based upon the smell of burnt marijuana alone, Officer Hudson had probable cause to search the entire passenger

compartment of the vehicle, including the area where the cocaine was located.  The challenged search was supported by probable cause.

### III.     Additional indicia of probable cause supported the challenged search.

Even beyond the smell of marijuana, Trooper Hudson testified to various other factors which, taken together, gave rise to probable cause that there were other drugs in Defendant's vehicle.

### A.     Jackson's signs of extreme nervousness

The Tenth Circuit has stated that observed signs of general nervousness "is of limited significance" in determining whether there was probable cause to conduct a search.  *Wald*, 216 F.3d at 1227.  However, "extreme and continued nervousness" is entitled to "somewhat more weight."  *United States v. West*, 219 F.3d 1171, 1179 (10th Cir. 2000).  Trooper Hudson testified that Jackson specifically exhibited signs of continued, extreme nervousness.  Sometime after the beginning of his encounter with Trooper Hudson, and while he was seated with Hudson in the patrol car, Jackson continued to exhibit signs of extreme nervousness, *i.e*, shallow breathing that was visible in his abdomen and an elevated heart rate that was visible in his neck.

### B.     Defendant's use of a rental vehicle

The use of a rental car, in and of itself, may contribute to a finding of probable cause; the Tenth Circuit has written that, "[w]e have also credited the idea that drug couriers often use third-party rental cars."  *United states v. Contreras*, 506 F.3d 1031, 1036 (10th Cir. 2007) (citing *United States v. Williams*, 271 F.3d 1262, 1270 (10th Cir. 2001)).

### C.     Jackson and Ransom's conflicting, implausible travel stories

Most critically, Trooper Hudson noted that Jackson and Ransom presented him with conflicting, implausible stories of their travel.  Jackson informed Trooper Hudson that he and Ransom had come to Oklahoma to spend a few days away from Springfield, Missouri.  This is

arguably inconsistent with the car rental agreement Jackson provided, which showed that the car had been rented on April 9, 2024 from Springfield, Missouri and was to be returned on April 11, 2024 – the day of the arrest.  This is also not consistent with Trooper Hudson's observation that there was no visible luggage in the vehicle.

Most notably, when Trooper Hudson questioned Ransom about their travel plans, he stated that they had traveled to Houston, Texas to purchase a vehicle.  This was not a particularly plausible story, as Ransom claimed to not have a wallet or any identification such as a driver's license (despite ostensibly planning to drive back from Houston, Texas to Springfield, Missouri), no cash, and, obviously, no car had been purchased.  Given the condensed time that Defendants possessed the rental car, Ransom's story did not align with Jackson's.

Defendants' conflicting, implausible stories would lead a reasonable officer to believe that Defendants were attempting to deceive him about the true reason for their travel – travel which, Trooper Hudson observed, appeared to be "hard travel" or travel in which Defendants were spending more time in the vehicle on the road than stationary.  Taken together with the use of a rental car and the absence of luggage, this was behavior consistent with long distance travel for the purpose of drug trafficking.

This is a powerful circumstance favoring probable cause.  The Tenth Circuit has held that "implausible or contradictory travel plans can contribute to a reasonable suspicion of illegal activity." *United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001) (citing *United States v. Kopp*, 45 F.3d 150, 1453-54 (10th Cir. 1995)).

### D.    Jackson's criminal history involving drug offenses

Prior to his search, Trooper Hudson also discovered that Defendant Jackson had a criminal history involving drug possession and distribution.  Dkt. No. 31-1 at 4.  Criminal history, while

not sufficient to establish probable cause, is relevant to the probable cause analysis and may "cast a suspicious light on other seemingly innocent behavior." *United States v. Reza*, 2024 U.S. App. LEXIS 3396, *20, 2024 WL 577538 (10th Cir. 2024) (citing *United States v. Davis*, 636 F.3d 1281, 1291 (10th Cir. 2011); *United States v. Santos*, 403 F.3d 1120, 1132 (10th Cir. 2005).

## CONCLUSION

Trooper Hudson's observation of an odor of burnt marijuana was sufficient to justify the search at issue, which did not extend beyond the passenger compartment of the vehicle.  Even if further justification were needed, and it is not, several other factors present here gave rise to probable cause to support the search conducted of Defendant's vehicle, given the totality of the circumstances.

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress [Dkt. No. 31] is denied.

Dated this 23rd day of July 2024.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE